IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


AUDUBON SOCIETY OF PORTLAND,

No. 03:10-CV-1205-HZ

                Plaintiff,

      v.

OPINION & ORDER

UNITED STATES NATURAL RESOURCES
CONSERVATION SERVICE,

                Defendant.


David A Bahr
Bahr Law Offices
1035 ½ Monroe Street
Eugene, OR 97402

Paul August Kampmeier
Washington Forest Law Center
615 Second Avenue, Suite 360
Seattle, WA 98104


1 - OPINION & ORDER

        Attorneys for Plaintiff

Kevin C. Danielson
US Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204

        Attorney for Defendant

HERNANDEZ, District Judge:

        Plaintiff Audubon Society of Portland brings three claims against Defendant United

States Natural Resources Conservation Service (NRCS):  (1) unlawful withholding in violation

of the Freedom on Information Act (FOIA), (2) missing a decision deadline in violation of FOIA,

and (3) violation of the Administrative Procedure Act (APA).  Defendant NRCS moves for

partial summary judgment on Plaintiff Audubon's first and third claims.[1]  Plaintiff Audubon

Society of Portland cross moves for summary judgment on all three of its claims.  I deny

Defendant NRCS's motion for partial summary judgment, grant Plaintiff Audubon's cross

motion for summary judgment; and dismiss claim three as moot.

## BACKGROUND

        The circumstances surrounding all three claims involve a FOIA request by Plaintiff

Audubon and the subsequent withholding and redaction of documents by Defendant NRCS.

Plaintiff Audubon had submitted a FOIA request regarding the Safe Harbor Agreement between

the U.S. Fish and Wildlife Service, the Oregon Department of Forestry, and NRCS.  Pl.'s Memo.

in Supp. of Cross Mot. for Summ. J. ("Audubon MSJ"), 1.  The Safe Harbor Agreement relates

to the conservation of the northern spotted owl on private lands and is part of the NRCS's

---

[1]Defendant NRCS's motion does not address Audubon's second claim.

2 - OPINION & ORDER

Healthy Forests Restoration Program (HFRP).  Id.; Def.'s Mot. for Summ. J. (NRCS MSJ), 3.

Audubon does not dispute the following facts in NRCS's concise statement of facts (Dkt. #15).

Id. at 10, n.1.

1. In a letter to U.S. Fish and Wildlife dated August 18, 2009, Audubon requested the documents regarding federal efforts to conserve or manage northern spotted owls.  Decl. of Lesley in Supp. of Def.'s Mot. for Summ. J. ("Kelly Decl.") Ex. A. The request included "documents and information in whatever form they have been recorded or retained, including but not limited to: correspondence sent or received, memoranda, policies, numerical data, telephone conversation notes, meeting attendance lists, meeting notes, maps, agreements, contracts, and electronic data."  Id.

2. On September 18, 2009, U.S. Fish and Wildlife provided Audubon with 401 documents responsive to the FOIA request and withheld a total of eight documents under Exemption 5 and 6.  U.S. Fish and Wildlife informed Audubon it was referring 45 additional documents to NRCS, the agency where the documents originated, for a decision on whether the documents could be released.

3. On October 7, 2009, NRCS informed Audubon it had reviewed the 45 documents. NRCS released 17 documents to Audubon and withheld the remaining 28 documents under Exemption 3 based on § 1619(b) of the Food, Conservation, and Energy Act (FCEA) of 2008, now codified at 7 U.S.C. § 8791(b).

4. On October 27, 2009, Audubon appealed the decision of NRCS to Dave White, Chief of NCRS.  Prior to a decision on the appeal being made, Audubon filed this action on September 30, 2010.

5. NRCS created a *Vaughn* Index setting describing the documents it has withheld under FOIA Exemption 3 and 7 U.S.C. § 8791(b) and explained the basis for withholding the documents.  Decl. of Brigette Beaton in Supp. of Def.'s Mot. for Summ. J. ("Beaton Decl.") Ex. 1.

6. NRCS employees reviewed the documents withheld under Exemption 3 and concluded they were properly withheld under 7 U.S.C. § 8791(b).

Audubon challenges the withholding of the 28 documents that were reviewed by NRCS.

Audubon MSJ, 1.

STANDARDS

3 - OPINION & ORDER

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted).  The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material.  Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

I.  Claim One - Withholding of Information Under FOIA

4 - OPINION & ORDER

The resolution of this claim depends on whether NRCS used a valid exemption under FOIA to withhold the requested documents.  If no exemption applies, then the documents must be disclosed.  NRCS has argued that the documents are protected from disclosure because the following exemption applies.  FOIA exempts matters that are

> (3) specifically exempted from disclosure by statute (other than section 552b of this title [5 USCS § 552b]), if that statute–
>
> (A) (I) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009 [enacted Oct. 28, 2009], specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  Exemptions under FOIA are narrowly construed because there is a "strong presumption in favor of disclosure".  Lahr v. NTSB, 569 F.3d 964, 973 (9th Cir. 2009).  The agency that invokes the exemption has the burden of proving that the exemption properly applies to the documents.  Id.

There is a two-part inquiry to determine whether the "Exemption 3" stated above applies to the Audubon's FOIA request.  Carlson v. United States Postal Serv., 504 F.3d 1123, 1127 (9th Cir. 2007).  "First, we determine whether the withholding statute meets the requirements of Exemption 3.  Then, we determine whether the requested information falls within the scope of the withholding statute."  Id.  NRCS argues that the "withholding statute" is § 1619 of the Food, Conservation, and Energy Act (FCEA) of 2008, now codified as 7 U.S.C. § 8791.[2]  The FCEA was enacted "[t]o provide for the continuation of agricultural and other programs of the Department of Agriculture through fiscal year 2012, and for other purposes."  110 Pub.L. No.

---

[2]From this point onward, I will refer to § 1619 of the FCEA as "§ 8791".

246, preamble.  The relevant section of the FCEA limits disclosures of

> (A) information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation practices, or the land itself, in order to participate in programs of the Department; or

> (B) geospatial information otherwise maintained by the Secretary about agricultural land or operations for which information described in subparagraph (A) is provided.

7 U.S.C. § 8791(b)(2)(A)-(B).[3]  Both parties agree that § 8791 is a "withholding statute" that meets the requirements of Exemption 3.  NRCS MSJ, 11-12; Audubon MSJ, 13.  Therefore, I assume that § 8791 is a withholding statute without deciding the issue.[4]

The second part of the inquiry is whether Audubon's requested information falls within the scope of § 8791.  The documents requested by Audubon regard NRCS's Healthy Forests Restoration Program (HFRP).  HFRP is a voluntary program with the purpose of "restoring and enhancing forest ecosystems to promote the recovery of threatened and endangered species, improve biodiversity, and enhance carbon sequestration."  Decl. of Ronald Alvarado in Supp. of Def.'s Mot. for Summ. J. ("Alvarado Decl.") ¶5.  Landowners who wish to participate in HFRP must file an application, submit to site visits, and submit a conservation plan to NRCS.  Id. at ¶11-13.

There are two subparagraphs in § 8791 under which the documents may be withheld from disclosure.  7 U.S.C. § 8791(b)(2)(A), (B).  Under § 8791(b)(2)(A), the documents must satisfy

---

[3]Although there are exceptions to these limitations of disclosures, i.e., situations in which disclosure is not prohibited, neither party have argued that the exceptions to § 8791 apply in this case.

[4]Section 8791 has been found to satisfy the requirements of Exemption 3.  Zanoni v. U.S. Dep't of Agric., 605 F.Supp.2d 230, 236-37 (D.D.C. 2009).

the following elements to prohibit disclosure: (1) the information is provided by an agricultural producer or owner of agricultural land, (2) the information concerns the agricultural operation, farming or conservation practices, or the land itself, and (3) the information is provided in order to participate in programs of the Department of Agriculture.  Under § 8791(b)(2)(B), the information shall not be disclosed if it is (1) geospatial information, (2) maintained by the Secretary[5], and (3) about agricultural land or operations for which information in subparagraph (A) is provided.

      A.       § 8791(b)(2)(A) - Agricultural Operation

     I begin the analysis by looking at the definitions of the key words in the statute.  Only "agricultural operation" is defined within § 8791 as "the production and marketing of agricultural commodities and livestock."  7 U.S.C. § 8791(b)(1).  Within this definition, "agricultural commodities" is the relevant term.  Looking at the definition section of the chapter[6] that includes § 8791, "producer" is defined as "an owner, operator, landlord, tenant, or sharecropper that shares in the risk of producing a crop and is entitled to share in the crop available for marketing from the farm, or would have shared had the crop been produced."  Id. at § 8702(13)(A).  For words undefined by the statute, I look to the ordinary meaning of the word.  FDIC v. Meyer, 510 U.S. 471, 476 (U.S. 1994) ("In the absence of such a definition, we construe a statutory term in accordance with its ordinary or natural meaning.") (citation omitted).

     With respect to subparagraph (A) of §8791(b)(2), the first element depends on whether

---

[5]"Secretary" is defined as the Secretary of Agriculture.  7 U.S.C. § 8701.

[6]The chapter that encompasses § 8791 is entitled "Agricultural Commodity Support Programs".

7 - OPINION & ORDER

the forest land owners are "agricultural producers or owners of agricultural land".  "Agricultural"

ordinarily means "of, relating to, or used in agriculture" and "agriculture" ordinarily means "the

science or art of cultivating the soil, harvesting crops, and raising livestock".  Webster's New

International Dictionary 43-44 (3d ed. 2002).  Given that "crop" appears in the statutory

definition of "producer", there is some redundancy in defining "agricultural producer".

Considering all of these definitions, the first element is satisfied if the land owner shares the risk

in cultivating or harvesting a crop and is entitled to a share in that crop that is available for

marketing.  Here, whether the forest land owners in this case are "agricultural producers"

depends on whether wood or timber is a crop.  "Crop" ordinarily means "the top, head, or highest

part [originally] of an herb, flower, or tree".  Id. at 540.  Given that the definition of "crop"

includes only the top or highest part of a tree, as opposed to the entire tree, I find that the land

owners are not agricultural producers.  The first element may still be met if the forest land

owners are "owners of agricultural land".  "Agricultural" means the "harvesting of crops" as

mentioned before.  Because I have found that the ordinary definition of "crop" does not include

wood or timber, the forest land owners are not agricultural producers.

For the second element, the information must concern the agricultural operation, farming

or conservation practices, or the land itself.  It is undisputed that the information submitted by the

land owners for the HFRP concerns the "conservation practices" or the catch-all category of "the

land itself".  Beaton Decl. ¶¶9-14, 24.  The information submitted by the landowners includes

"the size of the forestry operation; location, density, and type of plant species; current

management strategies; age and health of timber stands; harvest decisions; financial objectives;

conservation goals; history of the land; geospatial information (maps and aerial photographs

annotated with specific information about the land); and acreage amounts." Id.  This type of information concerns the land itself, and some conservation practices.

The second element could also be satisfied if the information concerns "agricultural operations".  As stated before, "agricultural operations" is statutorily defined as "the production and marketing of agricultural commodities and livestock."  7 U.S.C. § 8791(b)(1).  If wood or timber is considered an agricultural commodity, then the second element is met.  Audubon argues that the definition of agricultural commodities does not include wood or timber.  Plaintiff supports its contention by arguing that (1) the FCEA distinguishes between "agricultural" and "forestry" in its various sections (see e.g., § 2707), (2) the FCEA distinguishes between "farmers" and "forest land owners" (see e.g., §2709), and (3) §8791 is found in Title I of the FCEA for the administration of "Commodity Programs", while Title VIII of the FCEA is dedicated to "Forestry".  Audubon MSJ, 17.  Based on these references in the FCEA, Audubon believes that "agricultural commodities" do not include wood, timber, or forest products.

Defendants counter with their own cites to various Acts within the United States Code to show that agricultural commodities include wood, timber, and forest products.  Defendants refer to the Federal Crop Insurance Act  7 U.S.C. § 1518), the Agricultural Marketing Act of 1946 (7 U.S.C. § 1626), and the Agricultural Foreign Investment Disclosure Act (7 U.S.C. § 3508) in which "agricultural commodity", "agricultural product" and "agricultural" have included timber and forest products.  NRCS Resp. & Reply, 6.  An important distinction is that Plaintiff has limited its analysis to the FCEA, which contains the exemption statute § 8791.  Defendants on the other hand, have cited to Acts outside of the FCEA in support of its argument.  Because Congress has failed to expressly define "agricultural" or "agricultural commodities" as used in §

8791 of the FCEA, I find that Plaintiff's argument is more persuasive. Because the FCEA makes

a distinction between "agriculture" and terms related to forests, I find that wood, timber, and

forest products are not agricultural commodities under the FCEA.

The final element of subparagraph is whether the information was provided in order to

participate in a program of the Department of Agriculture. HFRP was established by NRCS, an

agency of the U.S. Department of Agriculture. Alvarado Decl. ¶¶4-5. The information

submitted by the land owners was submitted to NCRS for participation in HFRP. This final

element is satisfied.

In summary, I find that the information regarding the private forest lands was not properly

exempt from disclosure under Exemption 3 and § 8791(b)(2)(A). Although the second and third

elements were met, the first element was not met because the forest land owners are not

agricultural producers or owners of agricultural land. This finding affects document numbers 5,

11, 15, 25, 26, 27, 32, and 33, all of which had been completely withheld or redacted in part as

described in Exhibit 1 of the Beaton Declaration.

      B.      § 8791(b)(2)(B) - Geospatial Information

NRCS has also withheld documents under § 8791(b)(2)(B), which requires the

information to be (1) geospatial information, (2) maintained by the Secretary of Agriculture, and

(3) about agricultural land or operations for which information in subparagraph (A) is provided.

Geospatial information includes data such as global positioning system (GPS) coordinates. Ctr.

for Biological Diversity v. USDA, 626 F.3d 1113, 1116 (9th Cir. 2010). Here, NRCS has

withheld geospatial information about the land and operations of various private forest lands.

Beaton Decl. ¶8. As determined under the § 8791(b)(2)(A) analysis above, the information is

maintained by the Secretary of Agriculture (via NRCS).  Thus far, the first and second elements of § 8791(b)(2)(B) have been met.  For the final element, the information must concern agricultural land or operations.  As I previously stated, agricultural land or operations do not concern wood, timber, or forest products.  Therefore, I find that documents 6, 7, 8, 12, 13, 15, 16, 19, and 20, as referred to in Exhibit 1 of the Beaton Declaration, were not properly redacted or withheld by NRCS.  In summary, there is a violation of FOIA for the unlawful withholding of information.  Thus, Plaintiff Audubon's motion is granted and Defendant NRCS's motion is denied for claim one–the withholding of information under FOIA.

II.    Claim Two - Decision Deadline Violation of FOIA

Audubon's second claim concerns NRCS's delay in responding to an administrative appeal after it withheld disclosure of requested documents.  Compl. ¶¶35-36.  Defendant NRCS has admitted in its Answer that it failed to respond to Audubon's administrative appeal within the statutory time limits as required by 5 U.S.C. § 552(a)(6)(A)(ii) and 7 C.F.R. § 1.14(c).  Answer ¶13.  Because NRCS concedes this issue, I grant summary judgment in favor of Audubon for its second claim.  Plaintiff is entitled to a declaratory judgment that NRCS has failed to make a timely determination in Audubon's administrative appeal under FOIA.

III.    Claim Three - APA Violation

This claim is based on Section 706 of the APA, which generally allows a reviewing court to set aside an agency action if it is arbitrary, capricious, an abuse of discretion; in excess of statutory authority; or without observance of legally required procedure.  5 U.S.C. § 706(2).  Audubon brought this APA claim as an alternative to the violations alleged in its second claim–the deadline violation under FOIA.  Reply ISO Audubon MSJ, 11.  Because I have already

found in favor of Audubon for its second claim, the motions with respect to this claim are moot.

IV.    Attorney Fees

Plaintiff Audubon seeks reasonable attorney fees and costs pursuant to FOIA and 28

U.S.C. § 2412.  Compl. at 11.  Attorney fees and costs are granted because Audubon prevailed on

its claim of unlawful withholding of documents under FOIA.

CONCLUSION

Defendant NRCS's motion for partial summary judgment [# 14] is denied with respect to

claim one (violation of FOIA).  Plaintiff Audubon's cross motion for summary judgment [# 23]

is granted with respect to claims one (violation of FOIA) and two (violation of FOIA deadline).

Claim three (violation of APA) is dismissed as moot because it had been pled in the alternative to

claim two.

IT IS SO ORDERED.


Dated this ___11th_____ day of January, 2012.


                                   /s/ Marco A. Hernandez_____
                                   MARCO A. HERNANDEZ
                                   United States District Judge


12 - OPINION & ORDER