IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

AUDUBON SOCIETY OF PORTLAND,

                Plaintiff,

    v.

UNITED STATES NATURAL RESOURCES
CONSERVATION SERVICE,

                Defendant.

No. 03:10-CV-01205-HZ

OPINION & ORDER

David A Bahr
Bahr Law Offices
1035 ½ Monroe Street
Eugene, OR 97402

Paul Kampmeier
Washington Forest Law Center
615 Second Avenue, Suite 360
Seattle, WA 98104

      Attorneys for Plaintiff

Kevin C. Danielson
US Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204

     Attorney for Defendant

HERNANDEZ, District Judge:

     I previously granted summary judgment in favor of Plaintiff Audubon Society of Portland

on two claims for violations related to the Freedom of Information Act ("FOIA") and dismissed

one claim for violation of the Administrative Procedure Act.  Jan. 18, 2012 Am. Op. and Order

(#38).  Before the Court is Plaintiff's motion for attorney fees and costs (#49).

BACKGROUND

     Plaintiff Audubon Society brought three claims against Defendant United States Natural

Resources Conservation Service ("NRCS"):  (1) unlawful withholding in violation of the

Freedom of Information Act ("FOIA"), (2) missing a decision deadline in violation of FOIA, and

(3) violation of the Administrative Procedure Act ("APA").  All three claims involve a FOIA

request by Plaintiff and the subsequent withholding and redaction of documents by Defendant.

     To succeed on the first claim, Plaintiff had to prove that the documents were not

exempted from disclosure under the Food, Conservation, and Energy Act ("FCEA"), 7 U.S.C. §

8791.  The issue was a matter of statutory interpretation and hinged on the definition of

"agricultural commodities" as used in the FCEA.  The bulk of the parties' efforts were spent on

this issue.  I granted summary judgment in favor of Plaintiff.

     For the second claim, Defendant had already admitted in its answer that it failed to issue

a final determination within statutory time limits, thus conceding the second claim.[1]  The third

---

[1] Plaintiff's second claim alleges a "decision deadline violation" under FOIA.  "Plaintiff has a
statutory right to have Defendant NRCS process its FOIA appeal in a manner which complies
with FOIA.  Plaintiff's rights in this regard were violated when the Defendant NRCS unlawfully

claim, violation of the APA, was pled in the alternative to the second claim.  I dismissed the third

claim as moot because Defendant had conceded the second claim.  As the prevailing party, I

awarded reasonable attorney's fees and costs to Plaintiff pursuant to 5 U.S.C. § 552(a)(4)(E).

All claims were resolved at summary judgment.  Plaintiff filed the present motion requesting

$111,214.23 in fees and $531.97 in costs.

DISCUSSION

In determining a reasonable attorney's fee, the district court first calculates the lodestar

by multiplying the number of hours it finds the prevailing party reasonably expended on the

litigation by a reasonable hourly rate.  Rouse v. Law Offices of Rory Clark, 603 F.3d 699, 704

(9th Cir. 2010) ("'lodestar method' is the fundamental starting point in determining a reasonable

attorney's fee") (internal quotation omitted); Caudle v Bristow Optical Co., Inc., 224 F.3d 1014,

1028 (9th Cir. 2000) (fee award for Title VII claim); McGrath v. County of Nevada, 67 F.3d 248,

252 (9th Cir. 1995) (fee award under 42 U.S.C. § 1988).

There is a strong presumption that the lodestar figure is a reasonable fee.  Rouse, 603

F.3d at 704; Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006).  The presumptively

reasonable lodestar figure may be adjusted only on the basis of those factors not already

subsumed in the lodestar calculation.  Rouse, 603 F.3d at 704.  The factors the court may

consider include the preclusion of other employment by the attorney due to acceptance of the

case, time limitations imposed by the client or the circumstances, the amount involved and the

results obtained, the undesirability of the case, the nature and length of the professional

relationship with the client, and awards in similar cases.  Id. at 705.

/ / /

---

delayed its response to its administrative appeal beyond the determination deadline imposed by
the FOIA."  Compl. ¶ 36.  Defendant admitted the allegations.  Answer ¶ 23.

A.        Hourly Rate

Plaintiff seeks fees for the two attorneys who worked on the case, David Bahr and Paul

Kampmeier.  As a side matter, Plaintiff also seeks $1222.23 in fees for Marianne Dugan, an

attorney who submitted a declaration in support of the motion for attorney's fees.  Dugan had no

role in Plaintiff's success on its claims, nor did she author the briefs in Plaintiff's motion for

fees.  Her role was limited to submitting a declaration that states Plaintiff's requested fees are

reasonable.  Moreover, her declaration is largely duplicative of the five other attorneys who

submitted declarations in support of the requested fees.  It is unreasonable to shift the fees of a

declarant to Defendant.  The fees for Dugan are denied.

In determining the reasonable hourly rate, the court must look at the "prevailing market

rates in the relevant community[.]"  Blum v. Stenson, 465 U.S. 886, 895 (1984).  The court

determines what a lawyer of comparable skill, experience, and reputation could command in the

relevant community.  Id. at 895 n.11; see also Robins v. Scholastic Book Fairs, 928 F. Supp.

1027, 1333 (D. Or. 1996) ("In setting a reasonable billing rate, the court must consider the

'prevailing market rates in the relevant community' and determine what a lawyer of comparable

skill, experience, and reputation could command in the relevant community."), aff'd, 116 F.3d

485 (9th Cir. 1997).  The fee applicant has the burden of producing satisfactory evidence, in

addition to the affidavits of its counsel, that the requested rates are in line with those prevailing

in the community for similar services of lawyers of reasonably comparable skill and reputation.

Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB

Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates.

E.g., McElmurry v. U.S. Bank Nat'l Ass'n., No. CV-04-642-HA, 2008 U.S. Dist. LEXIS 35905,

4 - OPINION & ORDER

at *8, 2008 WL 1925119, at *3 (D. Or. Apr. 30, 2008). The 2007 Economic Survey[2] lists billing rates by the number of years admitted to private practice and by areas of private practice. Plaintiff urges the court to consider a survey from the National Law Journal, and highlights in particular, the rates from Stoel Rives and Schwabe, Williamson & Wyatt—two of the largest firms in Portland. One of Plaintiff's fee declarants also states that rates for Bahr and Kampmeier "fall well within what a number of large firms in Portland charge for attorneys with considerably less experience and expertise." Decl. Karl Anuta Supp. Pet. Att'y Fees ("Anuta Decl.") ¶ 9.[3] I am not persuaded that the National Law Journal survey is a better basis than the OSB Economic Survey to determine the reasonableness of rates. The rates at large firms in Portland tend to be the highest in Oregon. Neither Bahr nor Kampmeier are employed at large firms in Portland, making the comparison even less relevant. In contrast, the OSB Economic Survey surveys attorneys from across the state and analyzes the data across several variables, such as location, years of experience, practice area, etc. Accordingly, I will use the OSB Economic Survey as a benchmark to determine the reasonableness of the hourly rates.

Plaintiff seeks the following rates for Bahr and Kampmeier.

| Attorney | 2010 | 2011 | 2012 |
|---|---|---|---|
| Bahr | $380 | $410 | $410 |
| Kampmeier | $310 | $325 | $325 |

Plaintiff argues that the hourly rates are commensurate with, or below, rates of similarly situated Portland attorneys. Regarding Bahr, Defendant points out that Bahr's office is in Eugene[4], and

---

[2] The survey can be found at https://www.osbar.org/surveys_research/snrtoc.html.
[3] Plaintiff's other fee declarants find Bahr and Kampmeier's rates reasonable based on the National Law Journal surveys, which surveyed rates of Portland's largest firms. Buchele Decl. ¶ 11; Bloemers Decl. ¶ 11; Tebbutt Decl. ¶ 15; Brown Decl. ¶ 21; Dugan Decl. ¶ 29.
[4] Eugene is located in Lane County, which the survey has designated as belonging to the "Lower Willamette Valley"). 2007 OSB Economic Survey, 5.

thus the higher rates of Portland attorneys are not a fair comparison.  Plaintiff asserts that

Portland rates should be used based on <u>Marbled Murrelet v. Pacific Lumber Co.</u>, 163 F.R.D. 308,

317 (N.D. Cal. 1995).  "[T]he relevant legal community is considered to be that of the forum

district[.]"  <u>Id.</u>  In <u>Marbled Murrelet</u>, the case involved attorneys from across the nation.  <u>Id.</u> at

318.  The court determined that the Northern District of California was the forum district, and

that the San Francisco Bay Area, where the district court sits, was the relevant legal community.

<u>Id.</u>

        The forum district here is the District of Oregon—which spans the entire state, and is

comprised of several divisions, including Portland, Eugene, Medford, and Pendleton.

Defendant's argument has merit.  The OSB Economic Survey, which is a benchmark for the

reasonableness of fees, distinguishes between Portland and Eugene.  Although the case was filed

in the Portland division, other than attendance at the summary judgment hearing[5], Bahr litigated

the case from his office in Eugene.  Kampmeier, who is based in Seattle, Washington, appeared

by phone at the summary judgment hearing.  There were no other court appearances.  Given

these considerations, I find that it is reasonable to use the hourly rate for Oregon, as opposed to

the higher Portland rates or the lower Eugene rates.

        The survey further distinguishes rates by practice areas.  This case dealt with FOIA

violations and required statutory interpretation of terms used in the FCEA.  Although the subject

matter of the withheld documents involved conservation of the northern spotted owl, specialized

knowledge of environmental law was not required.  The primary issue was one of statutory

interpretation—whether "agricultural commodities", as used in the FCEA, included wood,

timber, and forest products.  One of Plaintiff's fee declarants argues that this case presented

"complex factual and legal issues of first impression".  Anuta Decl. ¶ 16.  I disagree.  The facts

---

[5] According to court records, the hearing lasted 25 minutes.

of the case were not complicated and the rules for statutory interpretation are well established.

Therefore, the "civil litigation (plaintiff)" rate is the most relevant practice area. According to

the survey, the average Oregon rate for this area of practice is $219.

I will also consider the years of experience of the attorneys. The rates for Oregon are

summarized in the table below.

| Experience | Average | 25th Percentile | 75th Percentile | 95th Percentile |
|------------|---------|-----------------|-----------------|-----------------|
| 10-12 years | $206 | $150 | $234 | $317 |
| 21-30 years | $238 | $180 | $275 | $378 |

Kampmeier's 11 years of experience falls in the middle of the 10-12 year range. On the other

hand, Bahr's 22 years of experience falls on the lower end of the 21-30 year range. I find that

the average rates are most reasonable. The average rate for an attorney with 10-12 years of

experience is $206, and $238 for an attorney with 21-30 years of experience. These rates

comport with the $219 average rate for civil litigators in Oregon.

One final consideration is that Kampmeier and Bahr are described as highly skilled by

their fee declarants. To account for their expertise, I will accord them above-average rates based

on the 75th percentile, which puts them in the top 25% of rates in their categories. Accordingly,

I find that $234 is a reasonable rate for Kampmeier and $275 is a reasonable rate for Bahr based

on the 2007 survey. Using the Bureau of Labor calculator[6] to account for inflation, the hourly

rates are displayed below.

| Attorney | 2006[7] | 2010 | 2011 | 2012 |
|----------|---------|------|------|------|
| Kampmeier | $234 | $253 | $261 | $266 |
| Bahr | $275 | $297 | $307 | $313 |

---

[6] The inflation calculator can be found at http://www.bls.gov/data/inflation_calculator.htm.
[7] The survey was conducted in 2007, but collected data for 2006 hourly rates.

B.      Number of Hours Spent

It is the fee claimant's burden to demonstrate that the number of hours spent was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1557 (9th Cir. 1989) ("[p]laintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [] claims.").

Bahr has extensive experience with FOIA requests and served as the primary attorney on this case. Decl. David Bahr Supp. Mot. Attorneys' Fees ("Bahr Decl.") ¶ 8. Kampmeier focuses his practice on state and federal environmental litigation. Decl. Paul Kampmeier Supp. Mot. Attorneys' Fees ("Kampmeier Decl.") ¶ 5-6. His expertise on this case involves issues related to conservation of the northern spotted owl. Id. at ¶¶ 9-12. Kampmeier, who has represented Plaintiff before, recommended that Plaintiff hire Bahr to take the lead on this case. Id. at ¶ 11. Kampmeier believes that he continued as co-counsel because Plaintiff knew him well and "had not worked closely with Mr. Bahr before[.]" Id. Plaintiff claims 214.9 hours of work for Bahr and 72.5 hours of work for Kampmeier. In reviewing the billing records, I have broken down Bahr and Kampmeier's hours into discrete stages of the case: complaint, discovery, summary judgment, and fees. The approximate number of hours spent by Bahr and Kampmeier at each stage is summarized below.[8]

| Attorney | Complaint | Discovery | Summary Judgment | Fee Petition |
|---|---|---|---|---|
| Bahr | 20 hours | 15 hours | 114 hours | 66 hours |
| Kampmeier | 3 hours | 9 hours | 40 hours | 21 hours |

---

[8] Bahr's billing records are found in Exhibit F of his declaration and Exhibit H of his supplemental declaration. Kampmeier's billing records are found in Exhibit E of his declaration.

1.  Complaint

The complaint was filed on September 30, 2010.  In reviewing the entries leading up to this date, Bahr billed approximately 20 hours.  Of these hours, Bahr took about 13 hours to draft the complaint, which does not include the time he spent reviewing the file.  The complaint is 11 pages total, of which approximately five pages is a recitation of events involving Plaintiff's FOIA request and Defendant's response.  Claims one and two are the FOIA claims and take up 2 pages, while the third claim, alleging an APA violation, takes up a little over 1 page.  The 13 hours that Bahr spent solely to draft an 11-page complaint was not reasonably necessary, particularly since I have recognized his expertise in FOIA claims with a higher hourly rate.  Bahr also received assistance from Kampmeier, who reviewed and edited the complaint.  I find that 8 hours is a reasonable amount for an attorney of Bahr's skill to draft the complaint.  I thus subtract five hours of time for Bahr.  In reviewing Kampmeier's billing entries during the complaint stage, I find that the entries were reasonably necessary.

2.  Discovery

Bahr billed approximately 15 hours during the discovery stage, while Kampmeier billed approximately 9 hours.  On one occasion, Bahr billed a tenth of an hour, i.e., six minutes, to review a minute order from the court.  The minute order was one sentence and would not have taken even one minute to read.  It is excessive to charge for tasks of less than a minute.  On two other occasions, Bahr billed one-tenth to review the order granting Kampmeier's pro hac vice application and an order granting a joint motion for extension of time.  These orders did not require extensive review since the parties had requested the actions.  It also would have taken less than a minute to read these docket entries to understand the court's order.  Finally, Bahr billed two-tenths for his phone call to the courtroom deputy regarding the submission of

pleadings.  Bahr has appeared many times in the District of Oregon, with the most recent case from 2010.  Bahr Decl. ¶ 13.  Billing time for this inquiry was not reasonably necessary.  In sum, I have subtracted five-tenths from Bahr's time.

In general, Kampmeier's discovery stage billings were reasonably necessary, with one exception.  Kampmeier spent four-tenths to draft and review Plaintiff's corporate disclosure statement.  The disclosure statement is three sentences long.[9]  Bahr also spent a total of two-tenths to review the statement twice and file it.  In addition, the records show that Bahr and Kampmeier spent a portion of a four-tenths phone call discussing the statement.[10]  Given that Kampmeier has represented Plaintiff on other cases in federal court, the information about Plaintiff's corporate status would have already been known to him.  I find the amount of time spent on the three-sentence statement by both counsel to be unreasonable.  I will allow two-tenths for Kampmeier to draft and review the statement.  It would not have taken Bahr long to review the three sentence-statement before filing.  I will allow one-tenth for time to review and file the statement.

        3.   Summary Judgment

I have further dissected the hours spent on the summary judgment phase into the following tasks:  reviewing briefs and orders, research, drafting the combined motion and response to Defendant's motion, drafting the reply, oral argument, drafting the supplemental brief, and communications during the summary judgment phase.  The approximate number of hours spent by counsel is summarized in the following table.

---

[9] The statement consists of:  "Plaintiff Audubon Society of Portland is a domestic non-profit corporation organized and existing under the laws of the State of Oregon.  Audubon Society of Portland is not publicly traded and has no parent corporation.  There is no publicly held corporation that owns 10 percent or more of its stock." Dkt. #9.
[10] Kampmeier originally billed five-tenths for the call, but reduced the time by one-tenth, presumably to match Bahr's records.

| Attorney | Review | Research | Motion | Reply | Argument | Supp. Brief | Comm'n |
|----------|--------|----------|--------|-------|----------|-------------|--------|
| Bahr | 4 | 25 | 34 | 17 | 19 | 8 | 8 |
| Kampmeier | 2 | 0 | 12 | 14 | 2 | 2 | 8 |
| **Subtotal** | **6** | **25** | **46** | **31** | **21** | **10** | **16** |

Bahr spent about 25 hours on research during the summary judgment stage.[11]  Of these 25 hours of research, about 19 hours were spent during on the combined motion and response, 5 hours for the reply, and 1.5 hours for the supplemental brief.  The majority of Bahr's entries simply state "Research MOSJ".  A few scattered entries give more detail about his research topics, such as the "Farm Bill".  Plaintiff's summary judgment motion, which included a response to Defendant's motion for summary judgment, was 25 pages long.  The substantive arguments regarding the claims began on page 13.  As explained previously, the main issue required statutory interpretation of whether "agricultural commodities", as used in the FCEA, included wood, timber, and forest products.  Because the term was undefined, the ordinary meaning of the word, as defined in the dictionary, was used.  Plaintiff also cited to two sections in the FCEA that distinguished between "agricultural" and "forestry".  Plaintiff further compared the title descriptions of Title I, VIII, and X of the FCEA to support its argument.

Bahr spent 19 hours on research for the combined motion and response, which was not reasonably necessary for a number of reasons.  First, the ordinary, dictionary meaning of the word dictated the analysis.  Second, in this day of electronic research, one can pull up search results for a particular term within an act in a matter of minutes.  I recognize that reviewing the search results would take additional time.   But Plaintiff's analysis of different parts of the FCEA involved quoting verbatim how relevant terms were used in the statute or comparing the descriptive name of titles within the FCEA—arguments that were neither complex, nor required

---

[11] This total does not include the 1.7 hours Bahr spent researching during the discovery phase.

much effort to explain.  Third, the majority of Bahr's billing entries are "Research MOSJ".
From these entries, I cannot determine the reasonableness of time spent on various issues.  Bahr
has not met his burden to show the reasonableness of his time spent researching for the motion
and response.  I find that 12 hours of research is reasonable given the straightforward nature of
the issue.  The additional 6.5 hours that Bahr spent researching for the reply and supplemental
brief are reasonable in light of the resulting work product.

Bahr spent about 34 hours drafting the combined motion and response, while Kampmeier
spent about 12 hours.  In total, about 46 hours were spent to draft the 25-page memorandum and
the accompanying 4-page Kampmeier declaration.  The majority of Bahr's entries state "Draft
MOSJ memo".  Kampmeier's entries indicate that he drafted his own declaration and the
background section of the memorandum.  Based on Kampmeier's entries, Bahr took the lead for
the rest of the memorandum.  Kampmeier spent 4.7 hours to draft the 2.5-page background
section, which means Bahr spent 34 hours to draft the other 22.5 pages.  As explained earlier, the
issue for the first claim, which takes up 21 pages of the 25-page brief, was an issue of statutory
interpretation.  I find it unreasonable that Bahr, an experienced attorney, spent 34 hours to draft
the memorandum.  First, while the issue was novel, the analysis primarily relied on the
dictionary meaning of words.  Second, Bahr had the assistance of Kampmeier, who spent 4.5
hours reviewing and editing the memorandum.  In light of the work product and the overlap of
effort, I will allow 20 hours for Bahr to draft the memorandum.  Kampmeier had handled the
FOIA request and appeal for Plaintiff prior to the filing of this case.  Kampmeier Decl. ¶ 10.
Given his familiarity with the case, I will allow 2.5 hours for time spent to draft the background
section.

The next phase of the summary judgment stage required Plaintiff to reply to Defendant's response.  Bahr billed 17 hours of time and Kampmeier billed 14 hours.  Combined, the two attorneys spent 31 hours to produce a 12-page brief in reply to Defendant's seven-page response brief.  Defendant's brief is not complicated.  Defendant cited to three different statutes to persuade the court that "agricultural" includes timber and forest operations.  Plaintiff does not begin to address this argument until page six of its 12-page reply.  The first five pages of Plaintiff's reply brief either repeat or summarize facts and arguments that had already been made in the prior briefs.  Plaintiff additionally spends two pages arguing the merits of its second claim.  As previously explained, Defendant had already conceded that it missed the FOIA response deadline in its answer.  Defendant did not argue this claim in its own summary judgment motion or its response to Plaintiff's summary judgment motion.  The last part of Plaintiff's reply brief addresses its third claim.  As noted earlier, this claim was pled in the alternative to claim two.

I have reviewed Defendant's response and Plaintiff's reply, as well as the corresponding billing entries.  Of the approximate 17 hours that Bahr spent on the reply, his main task was drafting the reply.  About three hours were spent on research.  I find that 14 hours is an unreasonable amount of time to spend drafting a reply, particularly since Kampmeier reviewed and edited Bahr's work.  The majority of the reply was unhelpful because it was repetitive of prior briefs.  Consequently, I will deduct seven of the 14 hours that Bahr spent drafting the reply.  Kampmeier's tasks for the reply involved editing Bahr's work, supervising a summer clerk's work on the reply, and writing a background section for the reply.  The background section of the reply was wholly unnecessary, as it was simply a condensed version of the background section of the Plaintiff's opening brief.  Kampmeier spent at least five hours on the fact section.  I will deduct four hours for the unreasonable and unnecessary duplication of work.  Furthermore,

I will not allow for the time Kampmeier spent supervising a summer law clerk. While I recognize the value of training future lawyers, shifting the cost to Defendant is not reasonable. It appears that Kampmeier has already omitted some, but not all the he time spent supervising the law clerk. I will additionally deduct the following time from Kampmeier.

| Date | Task | Time (hours) |
|------|------|:---:|
| 6/28/11 | Discuss project with summer clerk | 0.5 |
| 7/1/11 | Work with summer clerk | 0.3 |
| 7/5/11 | Review summer clerk's work and revise | 0.9 (out of 1.8) |
| 7/21/11 | Discuss reply with summer clerk | 1 |
| | TOTAL | 2.7 |

The next phase of summary judgment was oral argument. Bahr billed almost 19 hours and Kampmeier billed about three hours. Because the hearing only lasted 25 minutes, most of time billed time was preparation for the hearing. Bahr spent over 14 hours reviewing the file and preparing for the hearing. That amount of time is not reasonably necessary. The primary issue of contention was not complex, as further demonstrated by the short 25-minute oral argument. Reviewing both parties' summary judgment briefs would have been adequate preparation for the hearing. I will deduct 9 hours of preparation, as five hours is a reasonable amount of time for reviewing all the briefs. Bahr additionally billed 3.7 hours of travel time between Eugene and Portland. Bahr billed the time at $205, which is half of his requested rate at $410. I will allow this travel time, but at half the rate I have determined to be reasonable—$307, not the $410 requested rate. Kampmeier appeared at the oral argument by phone, but did not otherwise contribute to the hearing. Bahr was the primary attorney on this case and argued exclusively at the hearing. It was redundant to have Kampmeier prepare for and attend the hearing by phone. Thus, I will deduct three hours, the time that Kampmeier billed related to the hearing.

At the hearing, the court asked both parties about the relevance of § 8792(a) of the FCEA as to whether "agricultural commodity" included wood and timber. Neither party was prepared

with an answer, so both parties provided additional briefing on this narrow issue. Bahr spent about eight hours and Kampmeier spent about 2 hours to produce a four-page brief. Bahr's time is excessive, considering he had Kampmeier's help to review and edit the brief. I will deduct two of the eight hours from Bahr's requested time.

Before I discuss the time Plaintiff spent on the fee petition, there is one miscellaneous entry that needs to be addressed. The court issued its opinion and order regarding the summary judgment on January 11, 2012. On January 10, 2012, Bahr billed 0.4 hours for drafting a letter to the court inquiring about a ruling. That letter was never sent to the court and was not reasonably necessary to the prosecution of the case. I will deduct 0.4 hours from Bahr's requested time.

    4.  Fees

Finally, I address the time that Plaintiff spent during the fees stage of the case. The fees stage includes time for the failed efforts to reach a fee settlement and the time to prepare the fee petition. Bahr billed over 66 hours, while Kampmeier billed over 21 hours—more than 87 hours combined. The 87 hours requested during this final phase is almost a third of the total time (287 hours) billed by Plaintiff on this case. I will analyze the time in two phases: negotiating the fee settlement and preparing the fee petition.

Plaintiff sent Defendant a proposed settlement on January 25, 2012 and Defendant counter-offered around March 29, 2012. Plaintiff responded to Defendant's counter-offer around April 6, 2012. By April 8, 2012, negotiations broke down and Bahr prepared a joint motion to set a briefing schedule for the fee petition. All of the time that Bahr and Kampmeier spent leading up to this point was reasonable.

15 - OPINION & ORDER

Plaintiff's fee petition is supported by declarations from Bahr and Kampmeier, as well as six fee declarants.  The purpose of the fee declarant is to attest to the reasonableness of Bahr and Kampmeier's rates and hours.  I allow time spent to guide the declarants as to the purpose of the declaration and the documents to be reviewed.  However, the content of the declarations should solely be the work of the declarant.  The time Bahr spent reviewing the declarations is not reasonable and redundant.[12]  For the same reasons, it was not necessary for Bahr to review and edit Kampmeier's declaration.  I will deduct the time spent on these tasks, which totals 6.3 hours.  Adding to the redundancy, Kampmeier also reviewed the fee declarations and reviewed Bahr's edits to his declaration.  I will deduct the 3.2 hours that Kampmeier spent on these tasks.

CONCLUSION

Based on the foregoing, Plaintiff is awarded the following in attorney's fees.

| Attorney | Year | Rate | Hours | Fees |
|---|---|---|---|---|
| Bahr | 2010 | $297 | 21.2 | $6,296.40 |
| | 2011 | $307 | 77.6 | $23,823.20 |
| | 2012 | $313 | 61.1 | $19,124.30 |
| Kampmeier | 2010 | $253 | 7.8 | $1,973.40 |
| | 2011 | $261 | 30.5 | $7,960.50 |
| | 2012 | $266 | 18.9 | $5,027.40 |
| | | | | **$64,205.20** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[12] I allowed time spent to review the fee declarations and incorporate into the petition.

16 - OPINION & ORDER

A total of $64,205.20 is awarded in attorney's fees to Plaintiff.  Plaintiff also requested $531.97

in costs.  Defendant did not object to these requested costs.  I find the request reasonable and

award $531.97 in costs.

IT IS SO ORDERED.

Dated this _____ day of October, 2012.

_____
MARCO A. HERNANDEZ
United States District Judge